UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-21690-CIV-UNGARO/DUBÉ

CARMEN C. DOMINGUEZ,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #15) and the Motion for Summary Judgment filed by the Defendant (D.E. #21) pursuant to a Clerk's Notice of Magistrate Judge Assignment entered by the Clerk of Court, United States District Court for the Southern District of Florida. The issue before this Court is whether the record contains substantial evidence to support the denial of benefits to Plaintiff, Carmen C. Dominguez (hereinafter "Dominguez" or "Plaintiff").

### I. FACTS

The Plaintiff filed an application for supplemental security income alleging a disability onset date of November 1, 2006 (R. 104-112); and an application for disability insurance benefits alleging a disability onset date of November 7, 2006. (R. 57-64, 113-120).[1] The applications were denied initially and on reconsideration. (R. 52-53, 65-77). An initial hearing was held on February 3, 2009. (R. 24-51). Following the hearing, the ALJ issued a decision denying the request for benefits. (R. 9-

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

23). A request for review filed with the Appeals Council was denied. (R. 1-6).

The Plaintiff, age 54 at the time of the hearing on February 3, 2009, testified she has a twelfth grade education from Cuba and attended school in the United States to become a nurse's assistant. (R. 30). She also testified that she cannot write, read, speak or understand English. (R. 30-31). The Plaintiff stated that to pass her citizenship examination, she received a paper from her psychiatrist which excused her from taking the test. Dominguez stated her previous job was working in Goodwill, in the clothing donation warehouse where she sorted clothing. She further stated that part of the time was spent standing and the other time sitting. (R. 31). The Plaintiff testified she was required to lift bundles of clothing which weighed between 20-30 pounds. (R. 31-32).

According to the Plaintiff, she worked at Goodwill from 2005 through July 2007, when she stopped working. Prior to working at Goodwill, she worked as a nurse's assistant for 2 years. The Plaintiff stated her job duties included helping elderly people use the restroom, get dressed and with eating; and she also stated the job was performed standing and sitting. (R. 32). The Plaintiff testified she needed to lift the elderly people but was unsure how much they weighed. Additionally, the Plaintiff said she worked in a lamp factory painting lamps and she performed that job standing and sitting. Dominguez also testified she needed to lift the lamps which weighed between 20-30 pounds. (R. 33). Dominguez further testified she has not worked since August 1, 2007 because she has high blood pressure, hypertension and very strong depression. (R. 34-35).

Dominguez stated the depression makes her feel "weird," very sad and not wanting to bathe. According to Dominguez, she cannot concentrate, sometimes feels like an encumbrance to her family and has thought of committing suicide. The Plaintiff testified that nothing interests her and she does not have any hobbies. She further testified that she does not sleep well at night and only sleeps 3-4 hours due to medication side effects. (R. 35). The Plaintiff stated she has a lot of anxiety and strong

fear "almost always." The Plaintiff said she does not have a social life and does not visit friends or family. Dominguez stated she lives with her 19 year old daughter who cleans the house. Dominguez also testified she sometimes starts cooking but cannot finish. (R. 36).

The Plaintiff testified that since 2005 she has been taking Prozac, Xanax, Enalapril, Maleap, Restoril, and Desyrel. (R. 37-38). The Plaintiff also testified that as a result of taking her medications she has side effects such as sleepiness and drowsiness. The Plaintiff stated her doctor has changed her medication but also has told her that the side effects are normal. Dominguez testified she is consistent with taking her medication and her daughter helps her by reminding her to take them. (R. 38). According to the Plaintiff, she does not drink alcohol or take drugs other than those prescribed to her by her doctors. The Plaintiff also stated she is not married, she has a driver's license, but has not driven since she stopped working. The Plaintiff said her daughter's father drove her to the administrative hearing. (R. 39).

Dominguez testified that her daughter shops for food and clothing. She said her daughter also pays for food and clothing because she works part-time. The Plaintiff stated that she lives with her daughter in a room in the home of her daughter's father and that she does not pay rent. The Plaintiff testified that her doctor did not limit her driving and she does not drive because she is afraid and can not concentrate. The Plaintiff stated she does not belong to any social or religious clubs but never belonged to them in the past either. (R. 40). The Plaintiff stated she watches television but loses interest quickly. She does not read or use the computer, but she did read when she was younger. The Plaintiff testified she cannot currently work because she does not want to get out of bed, because of her lack of concentration and because she has "problems." (R. 41).

In addition to the Plaintiff's testimony, Nicholas Fidanza, a vocational expert, testified at the Plaintiff's hearing. (R. 42). The VE described the Plaintiff's past relevant work as a clothing sorter,

DOT # 361.687-014, light, with an SVP of 2; nurse's aid, DOT #355.674-014, medium, with an SVP of 4; and lamp decorator, DOT #749.684-018, light, with an SVP of 3. (R. 44). The ALJ then posed a hypothetical question to the VE as follows:

> ... I'd like for you to assume a hypothetical claimant of the same age, education and work experience as the claimant. I also want you to assume – also assume that she -- this hypothetical claimant can perform the full range of medium. That is she can lift/carry, push or pull 20 to 50 pounds occasionally and 10 to 25 pounds frequently and up to 10 pounds constantly. I'm just trying to see if they have any other restrictions. Now, could such a claimant – hypothetical claimant perform claimant's past relevant work?

(R. 45). The VE opined that such a person could perform the Plaintiff's past relevant work. The ALJ then posed a second hypothetical question wherein the restrictions set forth in the first remained the same and the hypothetical person would be able to perform the basic demands of unskilled work. The person can understand, remember, and carry out short, simple instructions, respond appropriately to supervision, interact appropriately with coworkers, and respond appropriately to changes in the routine work settings. The vocational expert opined that the clothing sorter would fall within the parameters of the hypothetical. (R. 45).

The ALJ then asked whether a person capable of performing the full range of sedentary work could perform the Plaintiff's past relevant work, to which the VE opined such a person could not. (R. 46-47). The VE opined however, that there was other work that such a person could perform, such as an order clerk, DOT #209.567-014, sedentary, with an SVP of 2; and ticket seller, DOT #211.467-030, sedentary, with an SVP of 2. (R. 47).

The Plaintiff's attorney then posed a hypothetical question as follows:

> Assume that you have a claimant with the same vocational background as the claimant as far as age, education, lack of knowledge of English and work experience. Assume that the claimant

> is rated as poor [and] limited – in following work rules, relating to coworkers, dealing with the public, using judgment, interacting with supervisors, dealing with work stresses, functioning independently, and maintaining attention and concentration.
>
> ...
>
> And assume that poor means ability to function in this area is seriously limited or not precluded. Would a person with that limitation be able to perform any of the claimant past relevant – past work, past jobs?

(R. 48-49). The VE stated that such a person would not be able to perform the Plaintiff's past relevant work or perform other types of substantial gainful activity. (R. 49).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. However, a review of the medical records and the specific issues raised by the Plaintiff in her Motion for Summary Judgment shows the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff had suffered from depression, a severe impairment. (R. 17). The ALJ further found that the Plaintiff did not have an impairment or combination of impairments that meets or equals a listing. (R. 17-18). The ALJ determined that the Plaintiff retained the residual functional to perform a full range of medium work. (R. 18). The ALJ found that the Plaintiff could return to her past relevant work as a clothing sorter/classifier. The ALJ concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 23).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the

record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that she is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v.

Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ erred in failing to accord adequate weight to the opinion of the Plaintiff's treating physician.

The opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding or the opinion was conclusory or inconsistent with the physician's own medical records. If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. See Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th Cir. 2004).

On September 9, 2008, the Plaintiff's treating physician, Nelson Hernandez, M.D., completed a Medical Assessment of Ability to do Work-Related Activities (Mental). (R. 366-367). The Assessment found the Plaintiff's ability to make occupational adjustments was "poor" in all areas. "Poor" was defined as the "ability to function in this area is seriously limited but not precluded." (R. 366). The Assessment further found that the Plaintiff's ability to understand, remember and carry out complex job instructions; and understand, remember and carry out detailed, but not complex job instructions were "poor;" while the Plaintiff's ability to understand, remember and carry out simple job instructions was "fair." (R. 367). "Fair" was defined as "ability to function in this area is limited but satisfactory." (R. 366). The Assessment also found that the Plaintiff's ability to behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability were all

"poor;" while the Plaintiff's ability to maintain personal appearance was "fair." (R. 367)[2].

In her decision, the ALJ stated as follows:

> From the mental perspective, I reject the residual functional capacity assessment furnished by Dr. Hernandez, for all of the reasons stated above. Rather, I accept the reconsidered opinion of the State Agency psychologist, (Exhibit 11F), in arriving at the established residual functional capacity assessment, noting that the evidence is insufficient to establish any functional limitations of the B. criteria.
>
> The cursory, check listed notes from the treating source fail to provide adequate information regarding the claimant's level of symptomatology and limitation. Moreover, the record indicates that whatever symptoms the claimant had experienced were ameliorated by medications (Exhibit 10F), and the claimant acknowledged in her testimony that the medications help her.

(R. 22). This Court previously held that, a treating physician's opinion will be given controlling weight if it is well supported by medically acceptable clinical and diagnostic techniques and is consistent with other evidence in the record. Holley v. Charter, 931 F. Supp. 840, 849 (S.D. Fla.

---

2. The Court notes that attached to the Plaintiff's motion is "Exhibit A" which is a Medical Assessment of Ability to do Work-Related Activities (Mental) which was completed by the Plaintiff's treating physician on January 30, 2009. Said Assessment was not previously made part of the record nor does it appear as though it was submitted to the ALJ or the Appeals Council. When the Appeals Council has denied review, only evidence presented to the ALJ will be considered when determining whether the ALJ's decision is supported by substantial evidence. Falge v. Apfel, 150 F. 3d 1320, 1323 (11th Cir. 1998). However, the Plaintiff can still succeed on his argument that remand is proper if he can prove that new evidence was submitted to the Appeals Council and that the Appeals Council refused to consider the new evidence submitted to it and denies review, that decision [the denial of review] is ... subject to judicial review because it amounts to an error of law. Falge, at 1324. The other course for the Plaintiff to prove that remand is proper require the Plaintiff prove:

> (1) ... new, non-cumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level.

Falge, at 1323. In the present case, this new evidence is cumulative as the findings contained therein are nearly identical to the assessment provided on September 2008. Accordingly, the Court will not consider this new evidence as it was not previously submitted to the ALJ or the Appeals Council, and it does not meet the standards of the regulations or the Eleventh Circuit.

1996).

In the instant matter, it is the opinion of this Court, the ALJ properly rejected the opinion of Dr. Hernandez as it was inconsistent with the doctor's own treatment notes and the other evidence contained in the record. The ALJ specifically stated the reasons for rejecting said opinion. Contrary to the September 2008 Assessment, treatment notes reveal that the Plaintiff's insight, judgment and reliability were all consistently fair, and on several occasions was less depressed. Additionally, during these same examinations the Plaintiff's general attitude was cooperative; speech was unremarkable; thought process, thought content and memory were all also unremarkable. (R. 282-284, 286, 331-333, 335-336, 340-343, 369-370). The medical evidence of record also reveals that the Plaintiff was stable on medication. (R. 332). The medical evidence does not support the extreme limitations placed on the Plaintiff by Dr. Hernandez in the September 2008 Assessment. As the ALJ provided good cause for rejecting Dr. Hernandez's Assessment, her decision is supported by substantial evidence.

The Plaintiff's second point of contention is that the ALJ erred in giving considerable weight to the global assessment of function, which is contrary to the regulations. The Global Assessment of Function indicates that GAF scores have no direct correlation to the severity requirements of the mental disorders listings. With regard to the GAF score assigned to the Plaintiff, the ALJ noted as follows:

> ... Based on this very brief examination, a GAF of but 45 was assigned, but this is unsupported by objective clinical findings (Exhibit 10F/13).
>
> ... Based on this very brief examination, a GAF of but 45 was again assigned, but this is also unsupported by objective clinical findings (Exhibit 10F/14).
>
> ... Again, a GAF score of but 45 was assigned (Exhibit 10F/5).

10

> However, I find that the cursory medical management notes nowhere support the serious impairment implied by such a score.
>
> ... and I note that the claimant "reports to be stable on current medication" with a slightly elevated GAF score of 50 (Exhibit 10F/3).

(R. 21).

It is the opinion of this Court that the Plaintiff's argument is without merit. As demonstrated above, contrary to the Plaintiff's position, the ALJ did not provide considerable weight to the GAF scores contained in the record. Rather, in reviewing the treatment history of Dr. Hernandez, the ALJ noted the GAF scores assigned and stated that these score were not supported by the objective clinical findings contained in the record.

The Plaintiff next contends that the ALJ committed reversible error in giving more weight to the opinion of the state agency reviewing consultant over the Plaintiff's long time treating physician. A treating doctor's opinion is entitled to more weight than a consulting doctor's opinion. Wilson v. Heckler, 734 F. 2d 513, 519 (11th Cir. 1984). This Court does not find the ALJ's analysis to be inconsistent with the required legal standards. SSR 96-6p states in relevant part as follows:

> 1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review.
>
> 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.
>
> 3. An updated medical expert opinion must be obtained by the administrative law judge or the Appeals Council before a decision of disability based on medical equivalence can be made.

SSR 96-6p (1-3).

This Court notes that this is not a case where the state agency reviewing consultants' opinions were given controlling weight over that of the treating physician. As noted above, the ALJ properly rejected the opinion of the Plaintiff's treating physician. The ALJ also reviewed the medical evidence in its entirety including the treatment notes of the Plaintiff's treating physician and the testimony of the Plaintiff. In accordance with SSR 96-6p, the ALJ also reviewed the opinion evidence as required. Accordingly, it is the opinion of this Court that error is not present and that the ALJ's decision is supported by substantial evidence.

The Plaintiff's fourth point of contention is that the ALJ failed to comply with Social Security Ruling 96-8p in assessing the Plaintiff's RFC. The residual functional capacity is an assessment which is based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997), citing, 20 C.F.R. § 404.1545(a). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess ... her work-related abilities on a function by function basis.... Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." Freeman v. Barnhart, 220 Fed. Appx. 957, 960 (11th Cir. 2007).

The Plaintiff asserts that the ALJ improperly failed to explain or properly evaluate the effect that the Plaintiff's multiple impairments would have on the Plaintiff's ability to work.

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p (4).

Specifically, the Plaintiff contends that the RFC reached by the ALJ is illusory because the hypothetical questions posed to the vocational expert did not include the psychiatric limitations that the Plaintiff has.

With regard to the Plaintiff's RFC, the ALJ stated as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567 (c) and 416.967 (c). The claimant can sit, stand or walk 6-8 hours (2 hours at one time) in an eight-hour workday. In addition, the claimant is able to lift, carry, push or pull 50 pounds occasionally and 25 pounds frequently. I further find that there are no nonexertional restrictions on functions such as reaching, handling, seeing, hearing and speaking. The claimant would not need to avoid such postural activities as frequent climbing, kneeling, crawling, crouching and stooping. Further, the claimant would be able to tolerate extremes of temperature or humidity and would not have to avoid working at heights or around hazardous moving machinery. The claimant would not also need to avoid excessive amounts of pulmonary irritants such as dust, fumes and gases. Finally, the claimant is able to understand, remember, and carry out simple job instructions, respond appropriately to supervision, co-workers, and usual work situations, and to deal with changes in a routine work setting. These abilities are consistent with an ability to perform unskilled work. Social Security Rulings 85-15 and 96-9p.

(R. 18-19).

The Court does not find that error is present. As noted above, the ALJ in the instant matter properly reviewed the medical evidence of record and properly rejected the testimony of Dr. Hernandez. As such, it was not error for the ALJ to formulate an RFC which did not include the limitations found by Dr. Hernandez. Additionally, the ALJ properly evaluated the opinions of the Plaintiff's treating physician and the non-examining physicians, and gave them proper weight in accordance with SSR 96-6p. After reviewing the record in its entirety, the ALJ determined that the

Plaintiff could perform a full range of medium work. As will be discussed below, the ALJ properly evaluated the credibility of the Plaintiff's testimony. This Court finds that the ALJ properly evaluated the evidence of record prior to making the RFC determination as required by the regulations, and thus, no error is present.

The Plaintiff's final point of contention is that the ALJ erred in accusing the Plaintiff of lying, malingering and exaggerating her symptoms.

In determining whether the Plaintiff suffers from disabling pain; the following test must be satisfied:

> [T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

Lamb v. Bowen, 847 F. 2d 698, 702 (11th Cir. 1988).

Once an ALJ determines that the objective medical evidence does not confirm the severity of the Plaintiff's alleged pain the ALJ must then look towards the Plaintiff's subjective complaints and determine whether they can reasonable be expected to produce the alleged pain. "Whether or not the condition could be expected to give rise to the complained of pain is a question of fact subject to the substantial evidence standard of review." Lamb, at 702, citing to, Hand v. Heckler, 761 F. 2d 1545, 1549 (11th Cir. 1985); Boyd v. Heckler, 704 F. 2d 1207, 1209 (11th Cir. 1983).

The credibility of the Plaintiff's testimony must also be considered in determining if the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain. Lamb, at 702. If the ALJ discredits subjective testimony, he must articulate explicit and

adequate reasons for doing so. Wilson v. Barnhart, 284 F. 3d 1219, 1225 (11th Cir. 2002). Failure to articulate the reasons for discrediting subjective testimony requires as a matter of law, that the testimony be accepted as true. Id.

While, an ALJ may not reject a plaintiff's subjective complaints of pain simply by the lack of objective evidence, the allegations of a severe impairment should be supported by medically acceptable clinical and laboratory diagnostic techniques and allegations of pain should be weighed with the overall record which includes clinical data, testimony, demeanor at the hearing, frequency of treatment, response to treatment, use of medications, daily activities, motivations, credibility and residual functional capacity. Watson v. Heckler, 738 F. 2d 1169, 1172-1173 (11th Cir. 1984).

Further, the claimant's testimony of pain or other subjective symptoms standing alone, are not conclusive evidence of disability. See, Macia v. Bowen, 829 F. 2d 1009, 1011 (11th Cir. 1987). If an ALJ rejects a claimant's testimony on credibility grounds, the ALJ must explicitly state as much and give adequate reasons for that determination. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). There is no requirement that the ALJ refer to every piece of evidence, but the credibility determination must not be "a broad rejection." Dyer, 395 F.3d at 1211. Failure to set out the reasons for the discrediting of subjective pain testimony mandates, as a matter of law, that the testimony be accepted as true. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).

With regard to the Plaintiff's credibility, the ALJ noted as follows:

> The many inconsistencies between testimony and the record go directly to the issue of the claimant's credibility. Moreover, motivation is a legitimate factor to be considered in assessing credibility. In the instant case, the testimony shows that the claimant resides with and is taken care of by her daughter, and so it appears that she is under no dire compunction to seek work.

> I further note that the claimant could and did work after her initial application was denied and amended her alleged onset date of disability to within days of her second application for disability insurance benefits.

(R. 22-23). The ALJ further noted that the Plaintiff was stable on medications and was never hospitalized for her condition. (R. 21-22). Additionally, the ALJ also mentioned that the Plaintiff was seen by Dr. I. Robertson who noted that testing was indicative of malingering or impaired motivation. The Plaintiff contends that, in part, error occurred as the consultative examination took place prior to the Plaintiff's amended disability onset date. While the Plaintiff is correct regarding the timing, the Defendant is correct in noting that the evaluation occurred five months prior to the amended date, the evaluation is part of the record and was properly considered by the ALJ. The Court finds that the ALJ specifically noted several inconsistencies between the Plaintiff's testimony and the record in addition to the statement that the Plaintiff was malingering. As such, the Court does not find that error is present and that the ALJ's decision was supported by substantial evidence.

### III. **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be **AFFIRMED**. Accordingly, the Motion for Summary Judgment filed by the Plaintiff (D.E. #15) should be **DENIED** and the Motion for Summary Judgment filed by the Defendant (D.E. #21) should be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Ursula Ungaro, United States District Judge. Failure to file objections timely shall bar the

parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this __17__ day of March, 2010.

_____
ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE